**IN THE UNITED STATES BANRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN THE MATTER OF: | CASE NO. 10-09881 (SEK) |
| JOSE SIFONTES SOTOMAYOR<br>FLORINNETTE SIFONTES | CHAPTER 13 |
| Debtors | |

**OPPOSITION TO OBJECTION TO CONFIRMATION**

**TO THE HONORABLE COURT:**

Come now Debtors, represented by the undersigned attorney, and very respectfully avers and prays as follows:

The debtors' main assertion in this case is the lack of consistency regarding the objections from the Chapter 13 Trustee Alejandro Oliveras as to the different expenses claimed by the debtors. These are the arguments:

1.    In the present case, the debtors filed for bankruptcy on October 22, 2010. The debtors filed a Chapter 13 case due, amongst others thing, because the debtor had to take an absence of leave without pay from work for seven months due to his physical disabilities. (docket #1).

2.    On November 23, 2010, the first 341 meeting took place and Trustee Oliveras did not comment, nor objected to any of the expenses claimed by the debtors. On such meeting, the Chapter 13 Trustee ordered the debtors to: a. Amend Schedules A and B to include inheritance participation of debtors' parents, b. Amend the Statement of Financial Affairs to include their income for each of the three years prior to the filing of the petition, c. Amend the Plan to comply with the unsecured pool, d. Submit the certification that the debtor filed the tax returns for year 2006 (filed in Connecticut) d. to endorse 50% of their life insurance to the order of the Chapter 13 Trustee and e. salary pay stubs.

3.    The debtors complied with all of Trustee Oliveras' requirements.

4.     In the 341 meeting held, the debtors were examined as to their expenses listed in Schedule J and questioned about each of the expenses claimed. The only expense claimed as a little high by creditor Banco Popular was their telephone family plan listed as $330.00 for their five (5) cell phones, but no other observations were made or objections on the record, either by creditors or the Trustee.

5.     Finally, the debtors informed the Trustee and all creditors present in the 341 meeting that they would receive a salary reduction.

6.     Two days before the Confirmation Hearing the Trustee requested the Court for a new 341 meeting to questioned the debtors regarding the salary reduction and as to the college expenses. The Court granted Trustee Navarro's request and set the new 341 meeting for Thursday February 17, 2011.

7.     When the debtors arrived to the 341 meeting Trustee Garcia expressed that they were not ready for the debtors meeting because it was not scheduled for that date. Afterward, the Trustee asked for a few minutes to get prepared and the 341 meeting started. In this second 341 meeting, Trustee Garcia questioned almost all of the debtors' expenses and classified them as excessive. Not only the college expenses, but most of the expenses listed.

8.     The debtors, through the undersigned attorney, uploaded all the evidence that Trustee Navarro requested at the confirmation hearing and then uploaded all the evidence requested by Trustee Garcia after the second 341 meeting to backup all the debtors' expenses.

9.     Finally, on February 22, 2011, Trustee Navarro filed the Objection to Confirmation and Opposition to the Motion for Exemption of the Means Test with new objections not raised on the first 341 meeting, nor the first confirmation hearing, nor the second 341 meeting.

10.     First, their household size is five. Trustee Navarro cannot argue with good faith that because two of the debtors' children have more than 18 years, they are not dependent of the debtors. There is plenty of case law that adult children who do not contribute to the household income and are dependent on the debtors, are claimed as part of the household size. Moreover, the three of them are claimed in each of the Tax returns and thus, they are dependent and are part of the Household income as defined an intended by the IRS. See: *In re Jewell, 365 B.R. 796 (2007) and* In Re: Thomas C. Herbert, *405 B.R. 165 (2008).*

11.     Secondly, they have two vehicles for which they claimed the deduction. Although the daughter uses it in Connecticut this is because they could not afford to move it to Puerto Rico. But this car is theirs and they are doing everything possible to bring it to PR because they need it.

12.     To explained the Taxes deducted in the Means Test, this comes from the Last Pay Stub deductions (Pay Period 1) - Taxes:

| Social Security FICA Tax | $279.12 |
|---|---|
| Medicare Tax | $96.36 |
| State Withholding | $1,435.70 |
| TOTAL x 2 = (Monthly Amount) | **$3,622.36** |

13.     The expenses claimed for continued contribution for household members of $1,500 is not for the care of Florinnette's mother,  which is $600 monthly, is a minimum amount for the their children's expenses which they are unable to pay. Thus, this expense was claimed for their children which are debtors' primary concern.

14.     The Trustee's newer objections to the debtors expenses, are as follow:

15.    <u>Telephone expense</u> for $330.00, this is for five (5) cell phones not two as discussed by the Trustee, because their household size is five not two.

16.    <u>Support of living dependents:</u>

| Son 22 years in Orlando Fl. | |
|---|---|
| Expenses | |
| Rent | $378 |
| Gas | $200 |
| Food, toiletries and misc. | $250 |
| Auto insurance | $125 |
| Entertainment | $100 |
| Internet and Cable | $48 |
| Electric | $61 |
| TOTAL | $1,162 |

| Son 23 years in Orlando Fl. | |
|---|---|
| Expenses | |
| Rent | $378 |
| Gas | $200 |
| Food, toiletries and misc. | $250 |
| Auto insurance | $125 |
| Entertainment | $100 |
| Internet and Cable | $48 |
| Electric | $61 |
| TOTAL | $1,162 |

| Daughter 18 years in Connecticut | |
|---|---|
| Expenses | |
| Rent | $332 |
| Gas | $175 |
| Food, toiletries and misc. | $200 |
| Auto insurance | $125.14 |
| Entertainment | $100 |
| Internet and Cable | $50 |
| Electric | $75 |
| TOTAL | $1,057.14 |

The TOTAL Monthly expenses are: $3,453.00 and the amended amount is $2,850, which is $950.00 for each kid.

17.    In addition to the $3,453.00, that they actually spend in the children , they also reserved for tuition per kid: 22 years old: $ 325.00 / mo., 23 years old: $500.00 /mo., and 19 years old would be an undetermined amount. With a total of   Total: $825.00 monthly. (Does not include books and misc. school expenses, ie; health insurance, other). *This amount was not included in Schedule J, because the kids were explained that from now on they had to take care of this.*

18.    Extended Auto Warranty Sedona for $178.00. This car is not the best in its class, the debtors pay the warranty in order to assure that the car runs well and that they can use it for further years to come. This car is in Connecticut and they could not transfer it to Puerto Rico when they moved because it was very expensive. But they want to bring it back to Puerto Rico and make an addition for debtor Jose to be able to drive it in his wheelchair. If the Trustee thinks that this is excessive the debtors have no problem as to the objection, the problem is that every time they comply with the trustee, newer objections arrive.

19.    Cable TV for $190.00. This is for the internet, for the Cable and apartment phone which includes long distance. This is a new objection but, if the Trustee thinks that this is excessive the debtors have no problem as to the objection.

20.    Transportation for $380.00, Although the debtors use in gas $200 monthly they projected that they need to transfer the Sedona and thus, they contemplated how much gas would they spent with the two cars and the sometime taxi cab that Debtor Jose sometimes uses when the debtor wife cannot pick him up from work.

21.      The debtors were explained through their undersigned attorney what the general rule is regarding the college expense but, that the Trustee has discretion and has room for negotiation as to the best interest of the creditors and the debtors.

22.      Finally, the Trustee asserts that the debtors lack good faith the filing of the plan. On the contrary, 1. The debtors did not inflate any of the expenses, they were not precise, on the contrary, debtors undermined all of their expenses to demonstrate good faith in this case. 2. They were sincere in each of the expenses and furthermore, provided evidence for each one claimed. They did not include expenses such as Florinnette's mother care ($600), nor the tuition for their kids, because they wanted to concentrate on giving their children the stability to finish college. 3. They have not made any misrepresentations; they have been sincere in each of the 341 meeting and punctual. 4. The Bankruptcy Code has not been unfairly manipulated by the debtors. Instead, the debtors feel that because of their monthly income they are being punished and pushed to live without the most important thing for them: the kids finishing college.  They also feel that the Trustee should have been more upfront as to their objections and bring them forth from the beginning in order for them to know what to expect, what to change and what the possibilities were regarding their plan. 5. The type of debt sought to be discharge is unsecured debt that was not incurred by shopping, or fraud or any other frivolous activity. This debt was because the debtor had to take an absence of leave for seven months which resulted in that he had to use his credit cards for living expenses.  Furthermore, he was relocated to Puerto Rico and was forced to sell his house for less than he was paying for the mortgage and thus, he had disburse money in the closing of the house. Once they arrived to PR they bought a new apartment which now has negative equity. 7. The debt that would be discharge is unsecured debt not procured by fraud. 8. The debtors' motivation in filing a Chapter 13 is repaying the creditors through an orderly manner and have a fresh start. They have expressed their good faith

in many which ways and the Trustee does not take into account that everything that the debtors own is exempted, except for Florinnette's participation in his father's inheritance and Jose's participation in his father's inheritance, which are both are out of reach for the debtors. Both their mothers are alive and both have more than five sibling, thus they would receive this money in future years depending on the local court which can take up to five years in resolving each case.

23.     Finally, the debtors' contention is that the Trustees (Oliveras, Navarro or Garcia), each have different views concerning the debtors' expenses and the debtors have in good faith and tried to comply with each of the different objections but every time the debtors complied, a new objection arises and the debtors now does not know where they stand and if the objections by the Trustees are in good faith.

24.     A new Plan was filed on 2/22/2011. The debtors' monthly payment will be $1,300 for 24 months and then, $1,550 for the last 36 months. The Proposed base is $89,214. The debtors will increase the base each time he receives a tax refund or a performance bonus above $1,000.

25.     As pointed out by the Trustee, the B22 Means Test in the voluntary bankruptcy petition reflects a general unsecured pool of $113,000.00 dollars. Due to this pool of "alleged monies" the Chapter 13 plan filed by the Debtor cannot be confirmed unless this Honorable Court grants this request to exempt the Debtor from this requirement.  The Trustee is correct regarding the general unsecured pool and the plan. However, there is plenty of case law giving discretion to this Court to exempt such payment especially when the actual and real financial situation of the Debtors is different.

26.     Finally, the First Circuit concluded that "projected" disposable income is forward looking and that courts should look to schedules I and J (rather than Form B22C) where the debtor's "current monthly income" amount is not true to the debtor's actual income. *ID*.

27.    Therefore, it is our position if this Honorable Court grants this request, then the

Trustee could favorable recommends that plan and the plan would be ready for confirmation.

**WHEREFORE** applicant prays from this Honorable Court to grant this request to exempt the

Debtor to pay the B22C General Unsecured Pool, confirm the plan and grant any other appropriate relief.

**NOTICE:**    Within ten (10) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 24th day of February, 2011.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date the foregoing motion

was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all CM/ECF participants.

/s/ **Maria Soledad Lozada Figueroa**
   **USDC-PR  222811**
   *Attorney for Debtor*
   San Jose St. #254
   Third Floor,
   San Juan, Puerto Rico 00901
   Phone: (787) 533-1400
   Fax: (787) 520-6003
   Email: lcdamslozada@gmail.com